IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MALHEUR FOREST FAIRNESS COALITION, an unincorporated association; PRAIRIE WOOD PRODUCTS, LLC, an Oregon limited liability company; RUDE LOGGING LLC, an Oregon limited liability company; BRETT MORRIS, an individual; MORRIS FORESTRY LLC, an Oregon limited liability company; ENGLE CONTRACTING, LLC, an Oregon limited liability company; H TIMBER CONTRACTING LLC, an Oregon limited liability company; DOUG EMMEL and DARRELL EMMEL, d/b/a Emmel Brothers Ranch; PAT VOIGT and HEDY VOIGT, d/b/a Ricco Ranch, | No. 2:22-cv-01396-HZ<br><br>OPINION & ORDER |

           Plaintiffs,

  v.

IRON TRIANGLE, LLC, an Oregon limited liability company, and OCHOCO LUMBER d/b/a Malheur Lumber Company, an Oregon limited partnership

           Defendants.

1 – OPINION & ORDER

Christopher T. Griffith
Christopher G. Lundberg
Eric J. Brickenstein
Michael E. Haglund
Haglund Kelley LLP
2177 SW Broadway
Portland, OR 97201

      Attorneys for Plaintiffs

Timothy W. Snider
Rachel C. Lee
Stoel Rives LLP
760 SW Ninth Ave, Suite 3000
Portland, OR 97205

Matthew Segal
Stoel Rives LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814

Lawson E. Fite
Schwabe, Williamson & Wyatt
1211 SW 5th Avenue, Suite 1900
Portland Or 97204

      Attorneys for Defendant Iron Triangle

Paul A.C. Berg
Daniel C. Peterson
Shayna Rogers
Cosgrave Vergeer Kester, LLP
900 SW 5th Avenue, 24th Floor
Portland, OR 97204

      Attorneys for Defendant Ochoco Lumber Company d/b/a Malheur Lumber Company

HERNÁNDEZ, District Judge:

Plaintiffs Malheur Forest Fairness Coalition, Prairie Wood Products, LLC, Rude Logging LLC, Brett Morris, Morris Forestry LLC, Engle Contracting, LLC, H Timber Contracting LLC, Doug and Darrell Emmel d/b/a Emmel Brothers Ranch, and Pat and Hedy Voigt d/b/a Ricco Ranch bring claims for monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C.

2 – OPINION & ORDER

§ 2, and conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, against Defendants Iron Triangle, LLC, and Ochoco Lumber Company d/b/a Malheur Lumber Company ("Malheur Lumber"). Defendants move to dismiss Plaintiffs' Second Amended Complaint. For the reasons below, the Court grants Defendants' motions.

## BACKGROUND

Plaintiffs—loggers and landowners in the Malheur National Forest market area—bring claims for monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, against Defendants Iron Triangle, LLC, and Malheur Lumber Company. Plaintiffs allege that Defendant Iron Triangle has used a combination of anticompetitive tactics to obtain monopoly power in two forest products-related markets in a market area consisting of the Malheur National Forest and private forestlands in Grant County and the northern third of Harney County, Oregon. Plaintiffs also allege that Defendants Iron Triangle and Malheur Lumber conspired to undermine Plaintiffs' ability to compete in the monopolized markets.

The Court granted Defendants' motions to dismiss Plaintiffs' First Amended Complaint without prejudice, finding that Plaintiffs had failed to adequately allege market power in the relevant product markets, anticompetitive behavior, antitrust injury, and conspiracy in restraint of trade. Plaintiffs were given leave to amend their claims as to two of the four markets originally alleged. Plaintiffs filed a Second Amended Complaint ("SAC") in response to the Court's order. SAC, ECF 64. Plaintiffs' Second Amended Complaint contains new allegations that Plaintiffs contend cures the deficiencies in the First Amended Complaint. Defendants now move to dismiss the Second Amended Complaint, this time with prejudice.

A detailed account of the facts underlying Plaintiffs' claims are set forth in the Court's October 13, 2023 Opinion & Order granting Defendants' Motion to Dismiss Plaintiffs'

Complaint ("O&O"), ECF 63, and are not reproduced here. The new allegations are summarized where relevant to the discussion below.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

///

///

4 – OPINION & ORDER

**DISCUSSION**

Defendants ask the Court to dismiss this case, arguing Plaintiffs have failed to state a claim under the Sherman Act and that further amendment would be futile. The Court agrees.

**I.      Monopolization**

Plaintiffs claim that Defendant Iron Triangle holds a monopoly as a seller in the "Logging Services Market" and the "Softwood Sawlogs Market" in what Plaintiffs have defined as the Malheur National Forest ("MNF") Market Area. Defendant Iron Triangle argues that Plaintiffs fail to state a claim for relief because Plaintiffs fail to plead facts that satisfy the three elements required for a Section 2 claim.

Section 2 of the Sherman Act makes it unlawful to monopolize, attempt to monopolize, or combine or conspire to monopolize. 15 U.S.C. § 2 ("Section 2"). To state a Section 2 claim for monopolization, a plaintiff must plead: "(1) [p]ossession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.,* 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). To plead the first element of a Section 2 claim, a plaintiff must allege that the defendant has monopoly power within a relevant market. Monopoly power is "the substantial ability to control prices or exclude competition." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (internal citations and quotations omitted). "Monopoly power differs in degree from market power, requiring 'something greater.'" *Id.* (quoting *Eastman Kodak Co. v. Image Tech. Srvs*, 504 U.S. 451, 481 (1992)).

A plaintiff can establish monopoly power with direct or circumstantial evidence. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir. 1995); *see also Epic Games, Inc.*, 67 F.4th at 998 ("Like market power, monopoly power can be established either directly or

indirectly"). Direct evidence of monopoly power includes a showing of restricted output and supracompetitive prices. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1001 (9th Cir. 2008). "To demonstrate monopoly power circumstantially, a plaintiff must: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil,* 51 F.3d at 1434 (citations omitted). Because Plaintiffs have failed to allege monopoly power, their Section 2 claim fails.

### A. Logging Services Market

Defendant Iron Triangle contends that Plaintiffs fail to allege monopoly power in the Logging Services Market because Plaintiffs have not adequately pleaded significant barriers to entry and expansion. The Logging Services Market is the market for the purchase and sale of contract logging services, by which providers of logging services are paid to harvest sawlogs from the areas of the forest where timber harvest rights have been awarded or from private forest land. Plaintiffs allege "at least five" barriers to entry substantially deterring new entry into this market: (1) consolidation of contract logging services by Defendant Iron Triangle under the 10-year Stewardship Contract; (2) the illegal tying arrangement between Defendants; (3) the high capital cost of modern logging equipment in light of the few available contract logging opportunities caused by Defendant Iron Triangle's control of the market; (4) the cost of mobilizing and demobilizing heavy, specialized logging equipment in light of the few available contract logging opportunities; and (5) the inelastic supply of timber controlled by the U.S. Forest Service. SAC ¶ 31. In their response brief, Plaintiffs also cite as direct evidence of monopoly power Defendant Iron Triangle's "hoard[ing] enormous volumes of forestland timber." Pl. Resp. 13 (citing SAC ¶ 6), ECF 78.

      i.  Direct Evidence

  Plaintiffs argue that they have alleged direct evidence of Defendant Iron Triangle's monopoly power in the Logging Services Market. Pl. Resp. 16. Specifically, Plaintiffs argue that Defendant Iron Triangle restricts output (i.e. logging opportunities) by "hoarding timber under contract rather than harvesting it," *id.* (citing SAC ¶ 6), and eliminating a pine outlet through its agreement with Defendant Malheur Lumber, which precludes logging service opportunities on private timberlands, *id.* (citing SAC ¶ 31). Neither argument holds water.

  First, Plaintiffs' allegation that Defendant Iron Triangle restricts logging opportunities by hoarding lumber is inadequately alleged in the Complaint. Plaintiff offers no specific allegations to support this conclusion. Further complicating this argument is Plaintiffs' allegation that Defendant Iron Triangle has only been able to "hoard enormous volumes of forestland timber under contract" through performance extensions from the U.S. Forest Service. SAC ¶ 6. In other words, whether and when to harvest timber is out of Defendant Iron Triangle's control. *See also* SAC ¶ 31 (alleging that the annual timber supply is "controlled by the Forest Service and subject to legally required sustained yield, endangered species and other supply constraints annually"). Plaintiffs suggest that Defendant Iron Triangle obtained these extensions based on "blatant misrepresentations understating its logging capacity" but offers no further detail as to the alleged misrepresentations. Such vague allegations of fraud or misrepresentations are inadequate. *See* Fed. R. Civ. P. 9(b); Op. & Order 23 (finding Plaintiffs had failed to adequately allege Defendants fraudulently obtained the stewardship services contract).

  Plaintiff's second argument regarding direct evidence—that Defendants have made it more difficult to process pine locally and therefore have driven down demand for logging services on private timberland—is not *direct* evidence of monopoly power. *Fed Trade Comm'n*

7 – OPINION & ORDER

*v. Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020) ("Direct evidence includes proof of actual detrimental effects on competition, such as reduced output, increased price, or decreased quality in the relevant market." (internal citations, brackets, and quotations omitted).

Finally, Plaintiff does not otherwise allege supracompetitive pricing or decreased quality in the relevant market. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) *overruled on other grounds by Lacey v. Maricopa Cnty*, 693 F.3d 896 (9th Cir. 2012) ("Direct proof of market power may be shown by evidence of restricted output and supracompetitive prices."). Rather, Plaintiff alleges that logging services are performed by Iron Triangle in lieu of subcontractors. SAC ¶¶ 39–42. Accordingly, Plaintiffs have failed to allege direct evidence of monopoly power.

### ii.  Circumstantial Evidence

Plaintiffs also argue that there are significant barriers to entry demonstrating circumstantial evidence of monopoly power.[1] First, some of the alleged barriers to entry flow from market power in the upstream markets, which Plaintiffs do not have. *See* Op. & Order 14–18 (holding that Plaintiffs do not have monopoly power with regard to the Stewardship Services or Harvest Rights markets because "a private entity who wins a competitive government contract . . . cannot control prices or exclude other bidders"). For example, Plaintiffs allege that Defendant Iron Triangle's suppression of timber harvest opportunities through its exploitation of its Stewardship Contract with the U.S. Forest Service is a barrier to entry. SAC ¶ 31. Similarly, Plaintiffs also link the alleged increased capital and mobilization costs to Defendant Iron Triangle's contracts with the U.S. Forest Service. SAC ¶ 31 ("With Iron Triangle in control of

---

[1] The Court already determined that Defendant Iron Triangle holds a dominant share of the relevant markets. Op. & Order 18.

8 – OPINION & ORDER

over 90% of the contract logging opportunities in the MNF Market Area, the number of contract logging opportunities is too small to attract new logging contract entrants utilizing the efficient, capital-intensive logging equipment necessary to compete effectively with Iron Triangle."). But, as the Court previously found, Plaintiffs cannot bootstrap market power in downstream markets to allegations regarding upstream market power or control of a resource Defendant Iron Triangle does not have. *See* Op. & Order 21 (finding Plaintiffs' allegation that Iron Triangle's "near total control of softwood sawlog supply through its dominance of the Harvest Rights Market and Logging Services Market" was not a barrier to entry). And to the extent Plaintiffs are alleging here that Defendant Iron Triangle's use of its own logging services is a barrier to entry, these allegations also fail. Such a finding would—as Defendant Iron Triangle argues—collapse monopoly power into a mere market share inquiry. Def. Mot. Dismiss 11, ECF 74; *see, e.g., Colsa Corp. v Martin Marietta Srvs, Inc.*, 133 F.3d 853, 856 (11th Cir. 1998) ("It is not anticompetitive for [the defendant] (a party to the Contract) to exclude [the plaintiff] (a non-party to the Contract) from performing services under the Contract.").

Second, as to the "highly inelastic" supply of timber, Defendant Iron Triangle also faces the same constraints as Plaintiffs. *See Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1428 (9th Cir. 1993) ("The disadvantage of new entrants as compared to incumbents is the hallmark of an entry barrier."). As Plaintiffs admit in their complaint, annual timber supply is almost entirely controlled by the U.S. Forest Service and "subject to legally require sustained yield, endangered species and other supply constraints annually." SAC ¶ 31. Accordingly, this market condition is not a barrier to entry.

Finally, Plaintiffs have not adequately alleged that Defendants are involved in an illegal tying arrangement as described below in Part II of this Opinion. In sum, the Court finds Plaintiffs

have not plausibly alleged barriers to entry sufficient to state a claim for monopolization in the Logging Services Market under Section 2 of the Sherman Act.

      B.      Softwood Sawlogs Market

As with the Logging Services Market, Defendant Iron Triangle argues Plaintiffs have failed to allege monopoly power in the Softwood Sawlogs Market. "The Softwood Sawlog Market is a commodity market for the purchase and sale of softwood sawlogs" of certain pine, fir, and larch species harvested in the MNF Market Area. SAC ¶ 34. Plaintiffs allege that there are two barriers to entry into this market. First, Plaintiffs allege that the "timber supply in the MNF Market Area is extremely limited and highly inelastic with the Forest Service controlling approximately 90% of an annual supply" such that "the volume of softwood sawlogs available for harvest each year is not materially affected by the markets for the lumber products produced from those sawlogs." SAC ¶ 35. Second, Plaintiff alleges that the "illegal tying arrangement" between Defendants "substantially reduces the level of timber harvest on private land and the number of competitors for timber harvest opportunities on public lands." SAC ¶ 35.

The Court has already explained why each of these alleged barriers to entry fail. Defendant Iron Triangle—like Plaintiffs—faces the same supply issues because of the Government's control of the softwood sawlog supply. *See supra* Part I(A)(i). In addition, Plaintiffs have not alleged a tying arrangement between Defendants. *See infra* Part II. In sum, Plaintiffs have not alleged monopoly power in the Softwood Sawlogs Market. Accordingly, Plaintiffs' claims of monopolization under Section 2 in either the Logging Services Market or the Softwood Sawlogs Market fail.

**II.**      **Conspiracy to Restrain Trade**

In their second claim for relief under Section 1 of the Sherman Act, Plaintiffs allege that Defendants:

10 – OPINION & ORDER

> [H]ave entered into a combination and conspiracy involving an illegal tying arrangement under which Defendant Malheur Lumber refuses to purchase pine sawlogs in the MNF Market Area from sellers other than Iron Triangle, in order to foreclose their ability to sell pine sawlogs locally and thereby undermine their ability to compete with Iron Triangle in the Logging Services and Softwood Sawlog Markets it monopolizes.

SAC ¶ 89. "Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1196–97 (9th Cir. 2012) (quoting 15 U.S.C. § 1). To state a claim for violation of Section 1, a plaintiff must plead facts that show: (1) a contract, combination, or conspiracy between two business entities; (2) by which the entities intended to harm or restrain trade or commerce; (3) which actually injures competition; and (4) the plaintiff suffered harm that flowed from the anti-competitive aspect of the conspiracy. *Id.* at 1197 (citations and quotations omitted). "[T]he phrase 'restraint of trade' is best read to mean 'undue restraint.'" *Qualcomm*, 969 F.3d at 988. "Thus, a Section 1 inquiry has both a threshold component (where there is a contract, combination, or conspiracy) and a merits component (whether it is unreasonable.)" *Epic Games, Inc.*, 67 F.4th at 981.

Defendants argue that (1) the alleged tying arrangement between Defendants Iron Triangle and Malheur Lumber "is the same agreement previously found insufficient to allege a Section 1 claim" and (2) the "SAC fails to plausibly allege that competition 'has been restrained unreasonably' by the alleged agreement." Def. Mot. Dismiss 32 (citing *Brantley*, 675 F.3d at 1198). The Court agrees.

First, Plaintiffs continue to allege that Defendant Iron Triangle "tied its willingness to supply all of [Defendant] Malheur Lumber's pine sawlog requirements to [Defendant] Malheur Lumber's agreement not to purchase logging services from any party other than Iron Triangle." SAC ¶ 7. But, as the Court has already determined, logging services and sawlogs are not two

11 – OPINION & ORDER

distinct products with distinct markets. *See* Op. & Order 37. Plaintiffs ask the Court to reconsider this ruling. Pl. Resp. 21. The Court declines to do so. "From Malheur Lumber's perspective, both the direct purchase of sawlogs and the purchase of logging services provide it with the sole product it needs for its mill – sawlogs." Op. & Order 37. The Court finds no reason to deviate from this conclusion here.

Second, as the Court held previously, Plaintiffs' allegations of unlawful exclusive dealing could just as easily suggest logical legitimate business behavior. Op. & Order 35–36. In evaluating whether any alleged agreement constitutes a Section 1 antitrust violation, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008); *Brantley*, 675 F.3d at 1198 (noting that some "types of vertical agreements do not necessarily threaten an injury to competition"). Plaintiffs allege that Defendant Iron Triangle agreed to supply all of Defendant Malheur Lumber's sawlog requirements in exchange for [Defendant] Malheur Lumber agreeing to not purchase sawlogs and contract logging services from Plaintiffs. SAC ¶ 7. Plaintiffs still ask the Court to infer a conspiracy from the fact that both events occurred: Defendant Iron Triangle supplied Defendant Malheur Lumber's requirements for sawlogs and Defendant Malheur Lumber declined to buy sawlogs or logging services from Plaintiffs. But Plaintiffs again fail to allege facts to support an antitrust connection between these events. The allegations could just as easily suggest a logical legitimate business reason for the parties' behavior. For example, Plaintiff alleges Defendant Malheur Lumber did not purchase sawlogs or logging services from Plaintiffs because its requirement for sawlogs had already been met. SAC ¶ 47 (alleging that Defendant Malheur Lumber "states that it has no present need for pine sawlogs or, more often,

makes offers of uneconomic log prices that will have the effect of generating no monetary return to the landowner above the cost of logging and log truck hauling"), ¶ 46 (alleging that Defendant Iron Triangle "had amassed a volume of timber under contract in the MNF Market Area . . . [that] represented over two years' worth of the annual pine sawlog requirements for [Defendant] Malheur Lumber Company").

Finally, just as in the First Amended Complaint, Plaintiffs' allegations that any agreement between Defendants had anticompetitive effects or foreclosed Plaintiffs from the Logging Services and Softwood Sawlogs Markets are contradicted by other allegations in the complaint. Plaintiff Prairie Wood remains an available buyer of fir sawlogs harvested by participants in the Logging Services Markets such that Plaintiffs can participate in the Softwood Sawlogs Market. SAC ¶ 10; *see also* SAC ¶ 11 (admitting that Defendant Iron Triangle does sell Prairie Wood fir softwood sawlogs). And as to pine sawlogs, the Second Amended Complaint continues to contradict their position that they were foreclosed from harvesting or purchasing mixed-species stands by acknowledging Defendant Malheur Lumber remains a buyer of pine sawlogs. SAC ¶ 47 (alleging Defendant Malheur Lumber "makes offers of uneconomic log prices that will have the effect of generating no monetary return to the landowner above the cost of logging and log truck hauling"). Again, Plaintiffs' response provides no explanation as to how this restrains trade. Accordingly, the Court finds Plaintiffs have failed to plausibly allege a claim under Section 1 of the Sherman Act.

### III. Leave to Amend

A party may amend its pleading once as a matter of course or, thereafter, "only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). The court should freely give leave when justice so requires." *Id.* However, the court need not grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in

13 – OPINION & ORDER

bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (internal quotation omitted). Amendment is futile "only if no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

The Court declines to grant Plaintiffs leave to amend. Plaintiffs have filed three complaints in this case. In dismissing Plaintiffs' First Amended Complaint, the Court walked through each element of Plaintiffs' claims and provided guidance to Plaintiffs on how to cure the identified deficiencies. Plaintiffs have failed to do so, and further amendments would be futile. At its core, this is a case about the U.S. Forest Service's decision to grant Defendant Iron Triangle a 10-year Stewardship Contract for the Malheur National Forest along with the associated logging rights. SAC ¶ 74 ("[T]he concentration of a 70% share of the timber sale program over 10 years on the Malheur National Forest in a single stewardship contract is the root precipitating cause of the distortion of market conditions within the Malheur National Forest Market Area that facilitated Iron Triangle's monopolization of the two markets described above."). In their Second Amended Complaint, Plaintiffs continue to complain of various harms that stem from this contract and ask that the Court order the U.S. Forest Service—who is not a party to this case—to approach the Stewardship Contract differently. *See* SAC ¶ 74 ("[T]he Forest Service should not only divide the upcoming 10-year forest stewardship contract into two or more components, but also redefine its 'best value' selection criteria to include consideration of restoring competitive conditions to the two markets that Iron Triangle currently monopolizes."). But, as the Court has already held, such claims are not actionable under the

14 – OPINION & ORDER

Sherman Act. *See Nat'l Reporting Co. v. Alderson Reporting Co.*, 763 F.2d 1020, 1024 (8th Cir. 1985); *Kirk-Mayer, Inc. v. Pac Ord, Inc.*, 626 F.Supp. 1168, 1171 (C.D. Cal. 1986).

## CONCLUSION

The Court GRANTS Defendants Motions to Dismiss [73] [74]. The Court denies leave to amend, and this case is dismissed with prejudice.

IT IS SO ORDERED.

DATED:_____September 19, 2024_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge